Good morning, your honors. May it please the court. Stacey Tolchin, foreign petitioner. I would like to reserve three minutes of my time for rebuttal. Petitioner today raises three challenges. He challenges the 2017 reinstatement order. He challenges the reasonable fear proceedings systemically and has applied to him. And he challenges the IJ's determination that he did not establish a reasonable fear of torture or persecution if removed to Honduras. I first would like to address the 2017 reinstatement order. Petitioner challenges this order because DHS has not met its burden in establishing by clear and convincing evidence that there is a prior order of removal to reinstate. The attached expedited removal order in the record is not final as it does not contain evidence of proper service and does not contain the requisite supervisory approval that is required by regulation to consider the order final. Now, respondent does not defend these inadequacies. He does not argue that the regulation at 235.3b2 was complied with, which requires that the quote alien sign the receipt, acknowledging receipt of the removal order. Respondent does not argue that the supervisory approval regulation was complied with, even though the regulation at 235.3b7 requires that a supervisor review the entire record and then sign off and authorize the order before it's considered final. Respondent's sole argument is 1252e of the statute precludes him from even raising these challenges. But petitioner is not challenging the expedited removal order. He's not saying that he was deprived of due process, he didn't understand translation, he didn't understand the order like in Garcia de Rincon. He's not arguing there was a gross miscarriage of justice. What he's saying is that there are factual prerequisites for an order of reinstatement. One of those is establishing that there is a prior order of removal. And that wasn't done here. The order- Why counsel, I mean, there is a document that says that it is an order of removal. And that says on its face that service, that it was served on Mr. Alvarado Herrera and that supervisory approval was obtained. So even if it wasn't served properly or the supervisory approval was not in fact obtained, why aren't those really collateral challenges to the validity of that order? So the issue is, is the order final? So as to the first issue on service, the Martinez-Serrano decision from this case, from this court says that the regulations for service must be complied with. The regulations require a signature acknowledging receipt of the order, right? So not notice of the charges, but receipt of the actual order of removal. So that comes after the supervisor's signature authorizing the case. That's not in there. And then as far as the supervisor goes, there's no supervisor's signature on there. It's clearly blank on the form. It says it was obtained by telephone, but this doesn't meet the regulations requirement because the supervisor has to review the entire question and answer proceeding and the record of proceeding and then sign off of it. And the actual expedited removal order regulations say it's not final until it's done by the supervisor. But what case tells us that you need perfect compliance with the regulation for this removal order to serve the statutory purpose that it would serve in this case? So yeah, there's no case law on this so far. There's a district court case on this. And then I believe an out-of-circuit case that was vacated. There's just no case law on this. But what's analogous I think would be, think about if an immigration judge orders removal and then the board vacates.  the IJ order of removal, it's an order of removal. It's just not final, right? And so that can't serve as the factual predicate for reinstatement until that order's final. And the regulations say the order's not final until the supervisor is signed off. Now, moving forward- Well, it's actually removed, right? I mean, he doesn't deny that this had the effect of a final order. Oh, of course, but certainly somebody could be removed with just a notice to appear that's filed. They don't have a removal order. They could have been removed, but it wouldn't be considered a removal order for purposes of reinstatement. Now, moving forward, if the court chooses to uphold the reinstatement order, it next must address reasonable fear. If the reinstatement order is vacated, the entire reasonable fear challenge unravels, right? Because there's only jurisdiction over the reasonable fear proceeding if there's an order of reinstatement of removal or administrative removal. Now, as far as the reasonable fear challenge, the regulations at 1203.1 are ultra-virus to the statute and violate due process. Unlike the credible fear provisions that are in the statute at 1225B, Congress did not create reasonable fear. Reasonable fear is a screening mechanism where the non-citizen, once they are issued a reinstatement or administrative removal order and expresses a fear of return to their country, they may appear before an asylum officer for purposes of expressing their fear. The asylum officer determines that they have a reasonable fear of persecution or torture. And if found that that's negative, they can review that determination before an immigration judge. Also, can I jump in and just ask, in terms of what you would ultimately envision this regime looking like if we agreed with you, it would basically be any time during the reinstatement process, if somebody asserts that they have a fear of being returned to their country of removal, at that point, what would have to happen is that the person would be immediately transferred for a full hearing under 1229A before immigration? No, Your Honor, they would be entitled to a withholding only hearing, right? So if- That's what I'm talking about. Right, but not the full removal hearing, right? So under 12- I'm not talking about the basis for relief, asylum, withholding, CAT. I'm just talking about in terms of the procedural mechanism by which the claim for withholding and CAT relief would be adjudicated. It would be a full, regular removal hearing under 1229A, correct? No, Your Honor. Like a trial. I think, aren't you arguing that it would be essentially a full trial with witnesses and evidence? Yes, Your Honor. So if you look at the reg at 1208.2C3, this is withholding only. So normally, if somebody passes reasonable fear, they get a withholding only hearing. It's not a removal hearing under 1229. It is a withholding only hearing where they are only able to apply for withholding and CAT. That is a full due process hearing. That is the right to present evidence, witnesses, testify, et cetera. But the only thing that they can apply for is withholding only and CAT. So that is what we think is the proper mechanism. Okay, so my question then is why haven't- The government obviously asserts that your argument on this point is foreclosed by our decision in Morales-Esquerdo, and I'm inclined to agree. All of the arguments that we confronted there in terms of this facial attack on the entire reinstatement regime seem to me to just sort of refute everything you want us to hold with respect to the procedural nature or the procedural requirements that would be needed to adjudicate a withholding only claim. So, Your Honor, Morales-Esquerdo addresses only the reinstatement of removal order, right? We're not saying you get a hearing on the removal order. Withholding and CAT only exist if there is a removal order. So if you look at the recent Supreme Court decision in Nasrallah, that actually illustrates this. You only get this point of the hearing for withholding and CAT. You don't get to vacate the removal order. The removal order will always exist. The only issue is can you be removed to your home country if you face persecution or torture and meet that 50% threshold for withholding and CAT. None of this is addressed in Morales except for the footnote where they acknowledge that people that are subject to reinstatement still get to apply for withholding and CAT. But Morales- We held against a challenge that an IJ must be the one to basically oversee the entirety of the process. That was the argument. That even the ministerial act of reinstating the removal order had to be supervised by an IJ in the first instance. So there was just basically an even more basic attack on this whole regime than the one you're advancing. And we rejected that also. Morales-Esquerdo, Your Honor, argued that 1229 proceedings must be available to contest a reinstatement order. That's what is rejected under Morales. But again, we're not arguing for 1229 proceedings. We're not arguing for removal proceedings. These are withholding only proceedings. They are just for withholding and CAT. It's not addressed at all in Morales-Esquerdo. And in fact, Fernandez-Vargas still recognizes this right to apply for withholding. So this is entirely distinct. It's a very different argument than what was raised in Morales. So what is the statutory basis for your argument that it needs to be a full trial? So 1231B3 is obviously the withholding of remedial statute. And FARA is what implements the CAT provisions from 1998. Those are the two. And again, if you look at Nasrallah- But can you tell me what language? I mean, I know there's a reference to burden of proof, but there's not language describing a trial. I'm wondering what specific language in those two statutes you're using to tell us that this needs to be a full trial. So there's no language in the statute, but if you, we've briefed this too, but if you go back to these alien stowaway cases, these are the cases that look at why Mountings v. Eldridge requires a full due process hearing for purposes of asylum in a case of an alien stowaway, even when those people were not eligible for deportation hearings, not eligible for the plenary hearings, not eligible for any relief, but asylum and withholding. And the stowaway cases say, well, they still need to have a due process hearing before an IJ because of the erroneous risk of deprivation as far as the Mountings v. Eldridge test. So it's not, I'm sorry, go ahead. That's, I mean, that's your due process argument, I guess. But on the statutory question, 1231b3 refers to the attorney general making a determination. And that's the same kind of language. When I realized it was a different provision in Morales v. Spirida, but the same kind of language that we said there under Chevron, the agency had discretion or could reasonably interpret the statute not to have a full blown trial before an IJ. So Your Honor, going again back to Marinkis, which is the Third Circuit case on stowaways, they look at the same provision that implemented withholding of deportation, the Refugee Act of 1980. And that act says that there must be a uniform procedure for these protections. And so Marinkis rejects this idea of a bifurcated approach to allow only INF interviews for certain things and not IJs for the other. But that statute talked about the uniform process. We don't have a statute that says that here, right? Well, but the withholding statute comes from, hello, can you see me? No. Okay. The withholding statute comes from the Refugee Act of 1980. And it's the same, that language regarding uniformity is in the very beginning of the Refugee Act of 1980. And that also applies to withholding of deportation, which is of course the predecessor to withholding of removal. So the other thing to look at, Your Honors, is there's an ongoing decision on CAT, I'm blanking on the name, I'm really sorry, that addresses the due process requirements for CAT before anybody can be removed. And again, looks at, a trade-adding Garcia is the case. And it looks at why there must be due process protection before anybody can be removed and their CAT case must be considered. So it's that these Matthews versus Eldridge requirements are being read into the statute. And of course, they existed before the current version of withholding of removal. But again, the other thing I just want to reiterate is that Congress created 1225B for expedited removal and did not do so. So by negative implication, the failure to do so for the reinstatement folks shows Congress's intent that it was allowing for a full hearing. And of course, there's a distinction between the folks who are coming to the border and seeking admission, as opposed to those who have come under reinstatement and have actually re-entered, albeit illegally, but they've re-entered. And Thurasagian from the Supreme Court that was just issued, really reiterates that and shows that for people that are coming to the US, the only process they're allowed is what Congress has given them. But for purposes of people who have entered the country, which is required for reinstatement, the Zimbades case from the Supreme Court, Rezai from the Supreme Court, all of these cases established that once a person has made a physical entry, even if their presence is illegal, that the due process clause attaches. And with that comes the Matthews versus Eldridge test. Moving along, I just wanted to get to this case specifically. If you look at the Bartolome case, which is really the only case to look at this reasonable fear proceedings, Bartolome in a reasonable fear proceeding got a right to counsel, a right to produce evidence, a right to testify, a right to present witnesses. In this case, we have no advisers regarding anything but the right to counsel, which by the way, the agency disputes is an automatic right, right? Here, there was a right to counsel, but even when the petitioner sought to introduce evidence, he was not allowed to get that into the record. He was not given any advisers by the asylum office that he could produce evidence, which appears to have happened in Bartolome as well. So if we agree with you that he should have been allowed to submit the evidence, which I believe are these articles that he tried to submit, could you speak to how the articles would have meaningfully strengthened his claim? Yes, Your Honor. So obviously the case is denied because in just cursory format, the FBIJ says no nexus, no persecuted or no, yeah, no nexus. So here, that's why the whole case was denied. When these articles go to the issues of corruption in Honduras between the gang and the police, which is 28 Jada and unpublished case, Coto Ortiz that I believe just recently we were also on, that addresses this issue. It shows the corruption that is endemic between the police and the gangs there, which is important in this case because these aliens that came in were wearing police uniforms. They shot the petitioner, they killed his boss. And so all of that goes to what the judge is finding. And remember, this is only a 10% threshold for reasonable fear. It's a screening procedure. And so it was absolutely relevant in the sense of it may have affected the outcome, right? It's our standard for prejudice. It may have affected the outcome. And I see I'm almost out of time. So I'd like to reserve, please. Of course, we'll give you some time for rebuttal. Don't worry about that. Right, let's hear from counsel for the governor. Good morning. This is Dana Camilleri for the attorney general appearing telephonically. Petitioner's challenges to the underlying expedited removal order and the reinstated removal proceedings and reasonable fear proceedings are foreclosed by this court's president. Garcia Durin-Conn is clear. She cannot challenge the underlying expedited removal order. It's completely controlling. And in terms of the reasonable fear and reinstated removal proceedings, Morales-Izquierdo coupled with Bartolome also dispense of all of her due process arguments. Bartolome in particular, discusses the abbreviated nature of these reasonable fear hearings, how they are distinct, but they are sufficient in terms of protecting and not removing people that have a reasonable fear of return to their home country. Well, put aside Bartolome because the court there acknowledged that the person wasn't making the kind of frontal attack on the regulatory regime that the petitioner is here. So focus on Morales and respond to what your opponent has said as to why that case is not in fact controlling. Right, well, Morales-Izquierdo said that the attorney general's regulations governing reinstatement of removal were a valid use of its authority as given to it by Congress in order to create these streamlined proceedings for people who are illegal re-entrants. It's honestly, I- I mean, isn't that the decision that's being made in the proceeding at issue in Morales-Izquierdo more of a ministerial determination about whether someone is subject to reinstatement, whereas we have a very different kind of determination here about whether there's a reasonable fear? Well, that's why I do think in terms of due process, you couple Morales-Izquierdo and Bartolome, which said that the reasonable fear proceedings satisfied due process to resolve those issues. In terms of her- I think you need something in addition to Morales, right? Because Morales is talking about a different statute and a really pretty different kind of proceeding. No, it's discussing about the reinstated removal order. And I think it also goes to her challenge in terms of the service and everything with the underlying removal, expedited removal order, which again, we think is foreclosed and shouldn't be looked at. What it does is say that the attorney general is correct in promulgating the regulations governing how reinstated removal proceedings operate. And they found that that was not, that that was first of all, satisfied due process rights of the aliens involved and that it was owed Chevron deference and was within what Congress has power, that Congress has delegated. And then Bartolome discusses, it doesn't, it's true that it's not a direct challenge to those regulations. Can I stop you? Counsel, can I stop you? Put aside the due process issue. And I'd like you to just focus on the statutory authority issue. So forget about Bartolome, forget about due process for a second. What the petitioner is saying is that we have these three forms of expedited removal, 1225B, 1228B, and this, the reinstatement process. And both of the other expedited removal regimes in which we have these very truncated procedures, they do, there is some source of statutory authority for streamlining the proceedings in the way that the agency has. And with respect to reinstatement though, there's a complete absence of any statutory, even a statutory hint from Congress that Congress had in mind that there would be this screening process. And I think that's her most forceful argument is that we have these three contexts in which this occurs. In two of them, Congress did provide some statutory, some textual indication that it wanted something like this. And if we have that, why wouldn't we assume that when Congress left that out of 1231A5, that it was not contemplating that this kind of streamlined proceeding would occur? Well, your honor, I think if Congress left it out, it was for the agency to decide. And these streamlined procedures are actually very similar to the credible fear proceedings in expedited removal orders, which I believe is what you're referring to. And they were created in order to mimic those other proceedings, which have also been upheld as a- Right, because there's a statutory hook for authorizing them. And so that's the reason, that's why I said, just put aside the due process question, just focus on whether Congress authorized this. In both of those other contexts, there is textual support for the notion that Congress did authorize the agency to basically truncate the kind of withholding only proceeding that the petitioner wants here. 1231A5, you're not gonna be able to point to any language in that statute that authorizes this. So why wouldn't we assume that, hey, when Congress wants something like this to be created, it tells us, and in 1231A5, it didn't. So why would we allow the agency just to step in and make up out of whole cloth this very streamlined proceeding? Well, Your Honor, I believe it goes back to Morales' Cierdo and the reinstatement of removal. And the point of that is that it is supposed to be a streamlined process, and not every alien is gonna be entitled. Withholding only proceedings are still full-fledged evidentiary hearings. It would basically overcome the presumption that these are supposed to be streamlined proceedings, which this court already said and endorsed that view. And so I think it's just a logical extension of that. And then the other case law, which at least implicitly endorses a reasonable fair screening process. I ask you a different question about 1231. So 1231B3A is the reason why somebody is entitled to seek withholding? Even in reinstatement proceedings, is that right? Your Honor, I honestly do not have that exact statute in front of me. Okay, then I'm not gonna know that. Okay, you should proceed. I'm sorry, Your Honor, I apologize. I do wanna make a point concerning the actual merits of the reasonable fair case. There were some questions about the evidence that he could have submitted and whether it would have made a difference. In his case, although he does say that in 2012 or 2013, he's not sure they had this sort of shootout with the gang members, he was arrested and served time in prison in 2014 or 2015. Without any incident, he said the police never mistreated him. In fact, he only served two months out of a 24-month sentence and he paid what he called a bond. So that really undercuts his claim that the police are gonna sell him out to the gang, that they're still searching for him, that the police are corrupt. They had him in custody. So no matter how many articles he wants to present saying police are corrupt, his own experience doesn't really bear that out or support his claim that they're gonna somehow participate or facilitate his torture by gang members. Are there any, if there are no other questions, I can rest. Looks like not, thank you. Okay, thank you very much. Let's put two minutes on the clock for both of you. Great, thank you, your honors. I just wanted to go back, Judge Watford, to the discussion on moralities, Gerardo. The only elements that were at issue there were a challenge to whether the person was deported, illegally re-entered and was an alien. That's what the court was looking at. So we are in a situation where the person does not dispute any of those, and then they apply for withholding of removal. So totally separate hearing. And again, going back to the regulation at 1208.2C3I, that is the withholding only regulation. That says specifically that these proceedings are conducted with the same rules as under 1240, which are the plenary removal proceedings. So again, it's not a plenary removal hearing, but the procedural rules still apply. And that's what we think should apply in these cases. Finally, I wanted to address the court on the issue of what evidence should have been submitted for prejudice. There's not much case law on this. There is a footnote in a decision culminor from the Ninth Circuit. It's 210-Fed3-967, note five. It says, yes, we can't consider evidence that wasn't in the record, but in assessing whether somebody was prejudiced by the failure to allow something in, we can look at what they would have submitted. And that's what we've done in this case. Finally, as to the issues regarding the merits, the issue of, of course, this arrest, all of that, that goes to the fear of a future persecution and not to the nexus or acquiescence issue that was addressed by the IJ. So that issue is not before the court. If there's nothing further, I'll rest here. Okay, thank you very much. Thank you. Thank you, Mr. Starr, you've been submitted.
judges: Watford, Friedland, Miller